# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE COMMUNITY COLLEGE DISTRICT | ) |
| OF CENTRAL SOUTHWEST MISSOURI, | ) |
| | ) Case No. |
| and | ) |
| | ) |
| A.C., by and through her Next Friend, | ) |
| CAMERON L. CLARK, | ) |
| | ) |
| and | ) |
| | ) |
| T.C., by and through his Next Friend, | ) |
| CAMERON L. CLARK, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Cincinnati Insurance Company ("Cincinnati"), by and through undersigned counsel, for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 47, states as follows:

### NATURE OF THE SUIT

1. This is a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. P. 57 to determine the rights and obligations of the parties to this case under a commercial general liability ("CGL") policy that Cincinnati issued to Ozarks Technical Community College ("OTC").

2. An actual and justiciable controversy exists between the parties. This action will resolve a dispute as to whether the Cincinnati policy provides coverage to OTC in connection with a lawsuit captioned *A.C. and T.C. by and through their Next Friend Cameron L. Clark v. Ozarks Technical Community College and Mechanical Services, Inc. d/b/a MSI Contractors*, Case No. 2531-CC01274, filed in the Circuit Court of Greene County, Missouri ("the Underlying Lawsuit").

## PARTIES, JURISDICTION, AND VENUE

3. Cincinnati is a corporation organized under the laws of the State of Ohio and having its principal place of business in Fairfield, Ohio. Cincinnati is a citizen of Ohio and is domiciled in Ohio.

4. Defendant The Community College District of Central Southwest Missouri is a political subdivision of the State of Missouri formed pursuant to § 178.770, R.S. Mo., *et seq*. The Community College District of Southwest Missouri is the legal entity under which OTC was organized and currently operates, and it may "sue or be sued" as such pursuant to § 178.770.2, R.S. Mo.

5. Defendant A.C. by and through her Next Friend Cameron L. Clark (hereinafter "A.C.") is a resident of Webster County, Missouri, and is domiciled in Missouri.

6. Defendant T.C. by and through his Next Friend Cameron L. Clark (hereinafter "T.C.") is a resident of Webster County, Missouri, and is domiciled in Missouri.

7. The amount in controversy of the Underlying Lawsuit is in excess of seventy-five thousand dollars ($75,000), exclusive of costs, interest, and attorneys' fees.

8. The Underlying Lawsuit was filed in Greene County, Missouri, a county in this federal district. The Underlying Lawsuit alleges conduct that took place within this federal district.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this case occurred in this federal district.

## BACKGROUND

10. On October 23, 2025, A.C. and T.C. filed their Petition in the Underlying Lawsuit.

11. A.C. and T.C. filed their First Amended Petition for Damages on October 28, 2025 ("the Underlying Petition").

12. A true and correct copy of the Underlying Petition is attached as Exhibit A.

13. In the Underlying Petition, A.C. and T.C. allege that A.C. was a student enrolled in a math course at OTC's campus during the fall 2025 semester, and that A.C. was pregnant with T.C. at the time.

14. In the Underlying Petition, A.C. and T.C. allege that, during the time A.C. was attending classes at the OTC campus, OTC and its contractor arranged for "construction, renovation, and/or maintenance work" to occur "in the area(s) around and/or directly below" A.C.'s math classroom.

15. A.C. and T.C. allege that during the time A.C. was attending classes at the OTC campus, the construction work created extremely loud noises that could be heard in A.C.'s classroom.

16. According to the Underlying Petition, the construction work at OTC's campus "involved the use of materials, chemicals, adhesives, solvents, paints, epoxies, and/or other substances that emit toxic fumes, vapors, and/or volatile organic compounds." A.C. and T.C. allege that toxic chemical fumes "migrated from the construction area into the third-floor classroom where A.C. attended class."

17. In the Underlying Petition, A.C. and T.C. allege that on Monday, September 29, 2025, A.C. "was exposed to toxic chemical fumes of extreme intensity while attending class" and that the fumes had a "nose and throat burning very strong like paint or chemical smell with a sharp epoxy smell." According to A.C. and T.C., "multiple other students in the class also complained of the fumes and reported getting sick," and the instructor of A.C.'s math class experienced lightheadedness.

18. A.C. and T.C. allege in the Underlying Petition that A.C. was "exposed to said toxic fumes for approximately 50 minutes during her class session on September 29, 2025." These toxic fumes included, upon A.C. and T.C.'s information and belief, "volatile organic compounds (VOCs), formaldehyde, toluene, xylene, benzene, epoxy resins, isocynates, Bisphenol A, phthalates and/or toxic substances commonly found in construction materials, adhesives, paints, and solvents."

19. According to the Underlying Petition, after A.C. attended her math class on September 29, 2025, A.C. became sick and "began experiencing symptoms of active preterm labor." A.C. alleges she was transported by ambulance to Mercy Hospital in Springfield, Missouri, where she gave birth to T.C. on September 30, 2025. According to the Underlying Petition, T.C. was born at 23 weeks and 6 days gestation.

20. In the Underlying Petition, A.C. and T.C. allege that T.C. "suffered from multiple severe and life-threatening medical conditions" as a result of his premature birth.

21. According to the Underlying Petition, "There is a demonstrable relationship between exposure to the toxic substances to which A.C. was exposed and the injuries she suffered, namely preterm labor and premature birth." A.C. and T.C. allege that exposure to "volatile organic compounds, formaldehyde, toluene, xylene, benzene, epoxy compounds, bisphenol A, phthalates

and other chemicals commonly found in construction materials" can cause "adverse reproductive outcomes, including preterm labor."

22. In the Underlying Petition, A.C. and T.C. allege that "T.C.'s extreme prematurity was caused by A.C.'s acute exposure to chemical fumes on September 29, 2025, and T.C.'s injuries and medical complications are direct consequences of his extreme prematurity."

23. In the Underlying Petition, A.C. and T.C. allege that "OTC was responsible for A.C.'s exposure to the toxic substances in that OTC owned, operated, and controlled the premises where the exposure occurred; contracted for and authorized the construction work that generated the toxic fumes; failed to ensure adequate containment, ventilation, and air quality controls; failed to warn A.C. of the dangerous condition; failed to relocate classes before the toxic exposure caused harm; and maintained control over the premises and the decision to continue classes in the affected area."

24. A.C. and T.C. each asserted claims for Premises Liability, Negligence, and Liability for Inherently Dangerous Activity against OTC.

## THE CINCINNATI POLICY

25. OTC has requested indemnity and defense from Cincinnati in connection with the Underlying Lawsuit pursuant to Policy No. 05ETD0444780 ("the Policy"), which is incorporated as if fully set forth and is attached as Exhibit B. The Policy's effective period was from July 1, 2025, to July 1, 2026.

26. The insurance coverage provided by the Policy is subject to its terms, conditions, endorsements, limitations, and exclusions.

27. The CGL Coverage Form, CG 00 01 04 13, provides, in most relevant part, the following insuring agreement:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

28. The CGL Coverage Form contains the following exclusion (hereinafter, "the Pollution Exclusion"), in relevant part:

2. **Exclusions**

    This insurance does not apply to:

    f. **Pollution**

    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:
       (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool, or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;
       (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never has owned or

> > occupied by, or rented or loaned to, any insured, other than that additional insured; or
> > (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes form a "hostile fire";
> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
> (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
> > (i) Any insured; or
> > (ii) Any person or organization for whom you may be legally responsible; or
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:
> > (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharge, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;
> > (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed

      by you or on your behalf by a contractor or subcontractor; or
    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".
  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"…

29. "Bodily injury" is defined by the Policy to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

30. The Policy contains an endorsement titled "Amendment – Pollutant Definition", form GA 4531 09 20, that changes the Policy's definition of "Pollutant" to the following:

> "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum byproducts, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:
> a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or
> b. The insured uses, generates or produces the "pollutants."

### COUNT I: DECLARATORY JUDGMENT

31. Paragraphs 1 through 26 are hereby incorporated by reference.

32. The Policy's Pollutant Exclusion generally bars coverage for damages arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

33. In the Underlying Lawsuit, A.C. and T.C. seek compensation for injuries allegedly caused by the discharge, dispersal, seepage, migration, release or escape of substances that meet the Policy's definition of "pollutants" on a premises owned and/or operated by OTC, who is an insured pursuant to the terms of the Policy.

34. In the Underlying Lawsuit, A.C. and T.C. do not allege that any bodily injury they allegedly suffered was caused by excessive noise.

35. A.C. and T.C. allege their injuries were directly and proximately caused by their exposure to substances that meet the Policy's definition of "pollutants" while on premises owned and/or operated by OTC.

36. The Pollutant Exclusion of the Policy applies to the allegations against OTC made by A.C. and T.C. in the Underlying Lawsuit.

37. Based on information ascertained by Cincinnati in its investigations of the events described in the Underlying Petition, the Pollutant Exclusion applies and relieves Cincinnati of its obligation to provide defense, indemnity, or insurance coverage to OTC in connection with the Underlying Lawsuit.

38. Because the Pollutant Exclusion applies to the allegations made in the Underlying Lawsuit, Cincinnati has no duty to defend or indemnify OTC in connection with the Underlying Lawsuit.

39. There exists an actual controversy of justiciable nature between the parties concerning the rights and obligations of the parties to the insurance contract.

40. This matter is ripe because there is a dispute regarding Cincinnati's exposure or duties in the settlement and/or adjudication of the Underlying Lawsuit.

41. Cincinnati has complied with all terms, conditions, and provisions of the insurance contract.

42. By virtue of the foregoing, a declaratory judgment is both necessary and proper to determine and set forth the rights, obligations, and liabilities that exist between the parties to the Policy in connection with the Underlying Lawsuit.

**JURY TRIAL DEMAND**

43. Pursuant to Fed. R. Civ. P. 38(b), Cincinnati hereby demands that this case be tried to a jury.

WHEREFORE, Plaintiff The Cincinnati Insurance Company prays that this Court enter judgment in its favor and against Defendants, declaring:

A. That Cincinnati has no duty to defend OTC pursuant to the Policy with respect to any claims asserted or that could have been asserted in the Underlying Lawsuit or the losses claimed therein;

B. That Cincinnati has no duty to indemnify or provide any other insurance coverage to OTC with respect to any claims, loss, or damages in the Underlying Lawsuit;

C. That Cincinnati has no duty to contribute in any manner or amount to any settlement or proposed settlement of the Underlying Lawsuit and the claims asserted therein; and

D. For such other and further relief as the Court deems just and proper.

LITCHFIELD CAVO, LLP


By */s/ Michael L. Brown*
Michael L. Brown      #56573
Blaine P. Smith       #74504
Samuel A. Pomeroy     #75992
10401 Holmes Road, Suite 220
Kansas City, MO  64131
(816) 648-1400
(816) 648-1401 Fax
brown@litchfieldcavo.com
smithb@litchfieldcavo.com
pomeroy@litchfieldcavo.com

**ATTORNEYS FOR PLAINTIFF**